IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|                     | * |                          |
|---------------------|---|--------------------------|
| SANA FARHAN,        | * |                          |
|     Plaintiff,      | * |                          |
|     v.              | * | CIVIL NO.: WDQ-11-1943   |
| OMAR FARHAN, *et al.* | * |                        |
|     Defendants.     | * |                          |
|                     | * |                          |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Sana Farhan sued Omar Farhan[1] and Malik Khizar to enforce financial support affidavits.  Pending is Sana's motion for summary judgment and default judgment. For the following reasons, Farhan will be granted leave to file a surreply. Sana's motion will be denied.

I.   Background[2]

Sana is a citizen of Pakistan.  *See* ECF No. 29-3 at 19. Farhan and Khizar are citizens of the United States.  *See id.* at 24, 31.  On March 22, 2009, Sana and Farhan married in Pakistan. ECF No. 34-1 ¶ 4.  Sana swore that her sister and Farhan's

---

[1]  The parties generally refer to Omar Farhan as "Farhan" and Sana Farhan as "Sana" in the record.  The Court will follow this practice.

[2]  In reviewing a motion for summary judgment, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

mother arranged the marriage. *Id.* ¶ 2.  Farhan affirmed that Sana's father and Farhan's mother made the arrangements.  ECF No. 35 ¶ 1.

Sana and Farhan did not spend any time alone together in Pakistan. *Id.* ¶ 2; ECF No. 34-1 ¶ 5.  Farhan affirmed that her parents did not permit them to spend time alone.  ECF No. 35 ¶ 2.  Sana swore that the nature of the festivities and the large groups present prevented her from speaking with Farhan privately.  ECF No. 34-1 ¶ 5.  After the wedding, Farhan returned to the United States; Sana remained in Pakistan. *See id.* ¶ 5.

To obtain an immigrant visa for Sana, Farhan and Khizar, a local businessman, submitted I-864 Affidavits of Support, promising to financially support Sana. *See* ECF Nos. 24 at 2, 29-3 at 23-37.  Khizar's affidavit was necessary because Farhan's income was insufficient. *See id.* at 30, 33.  On February 9, 2010, Sana arrived in the United States and began living with Farhan and his family.  ECF No. 34-1 ¶ 9.

Sana and Farhan attempted to consummate the marriage but were unsuccessful. *See id.* ¶ 10.  Sana attributes this to Farhan's physical impairment. *See id.*  Farhan claims that after their initial attempt failed with his premature ejaculation, Sana refused further attempts of intercourse.  ECF No. 35 ¶ 7.

2

He affirmed that Sana's sister requested that Farhan and Sana not be allowed to sleep in the same room. *Id.* ¶ 4.

One day,[3] Sana and Farhan went to Pizza Hut for dinner. ECF No. 34-1 ¶ 15. Sana swore that Farhan's sister kept calling and demanding that he take Sana home to keep their mother company. *Id.* Farhan affirmed that Sana said that "she never really liked him," and her sister had "found a guy for [her]" in New York. ECF No. 35 ¶ 9. On March 7, 2010, Sana's green card arrived. *Id.* ¶ 5.

On March 10, 2010, Farhan and Sana went to a urologist's office. ECF No. 34-1 ¶ 20. Sana swore that the urologist was not able to treat Farhan but would refer him for mental health treatment. *Id.* Farhan said that all he needed was surgery to fix his sexual problems. *Id.* When Farhan started yelling at Sana, the urologist offered to call the police. *Id.* Sana said yes, and the police took her to a shelter. *Id.*

Farhan affirmed that the doctor never mentioned mental health treatment or surgery. ECF No. 35 ¶ 6. Instead, Sana became upset when the doctor said there was nothing wrong with Farhan. *Id.* The police were not called. *Id.* Sana's father later "spread the word among relatives that he is not a male in Pakistan." *Id.* ¶ A.

---

[3] The date is not in the record.

Later that day, Sana and two police officers went to the Farhan home to get her belongings. ECF Nos. 33 ¶ 7; 34-1 ¶ 20. Sana went to stay with her sister in New York. ECF No. 34-1 ¶ 21. Sana said that Farhan and his family had abused her; she sought to have her green card conditions changed under a battered spouse waiver. *See id.* ¶¶ 1, 22. On February 7, 2011, Farhan sought limited divorce. ECF No. 34-2.

On July 15, 2011, Sana sued Farhan and Khizar to enforce the I-864 affidavits. ECF No. 1. On November 22, 2011, Farhan answered. ECF No. 16. On November 26, 2011, Sana moved for a Clerk's entry of default, which was granted on November 28, 2011. ECF Nos. 17, 18.

On May 24, 2012, Sana's counsel contacted Khizar, who did not realize that the case was still pending. ECF No. 24 at 2. Pursuant to the Court's order, on July 3, 2012, Khizar stated that he did not consent to a Magistrate Judge conducting settlement negotiations. ECF No. 28.

On July 22, 2012, Sana moved for summary judgment and default judgment.[4] ECF No. 29. On July 31, 2012, Farhan opposed the motion. ECF No. 33.[5] On August 14, 2012, Sana replied. ECF

---

[4] Although the motion is captioned "Motion for Summary Judgment and for Default Judgment," Sana makes no argument for default judgment. *Cf.* ECF Nos. 29, 29-1.

[5] The response includes a purported answer and counterclaims against Sana. *See* ECF No. 33. As more than 21 days had passed

4

No. 34.  On August 21, 2012, Farhan filed a surreply.  ECF No.
35.  Khizar did not respond.

II.  Analysis

   A.   Farhan's Surreply

Farhan's "Reply to Response to Motion For Summary Judgment
and Against Default Judgment," is in substance a surreply
affidavit of facts.  *See* ECF No. 35.  Under Local Rule 105.2.a,
a surreply may not be filed without leave of the Court.  Sana
has not objected to Farhan's surreply.

Sana attached to her reply an affidavit containing numerous
new facts to refute Farhan's defense of fraud.  *See* ECF No. 34-
1.  Farhan's surreply is a refutation of Sana's affidavit.  *See*
ECF No. 35.  Because Farhan is *pro se* and Sana presented new
evidence in her reply, the Court will permit Farhan to file his
surreply and will consider his affidavit.[6]

   B.   Motion for Summary Judgment

      1.   Legal Standard

Under Fed. R. Civ. P. 56(a), summary judgment "shall [be]
grant[ed]   . . . if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to

---

before Farhan submitted this document, he must have the Court's
permission or Sana's consent before amending his answer.  *See*
Fed. R. Civ. P. 15(a).

[6] *See Williams v. Bartee*, Civil No. CCB-10-935, 2011 WL 2842367,
at *2 (D. Md. July 14, 2011); *Zhang v. Sci. & Tech. Corp.*, 382
F. Supp. 2d 761, 767 (D. Md. 2005).

judgment as a matter of law." Fed. R. Civ. P. 56(a).[7]  In
considering the motion, "the judge's function is not . . . to
weigh the evidence and determine the truth of the matter but to
determine whether there is a genuine issue for trial." *Anderson
v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A dispute
about a material fact is genuine "if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
*Id.* at 248.

The Court must "view the evidence in the light most favorable
to . . . the nonmovant, and draw all reasonable inferences in
[his] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290
F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the
"affirmative obligation of the trial judge to prevent factually
unsupported claims and defenses from proceeding to trial,"
*Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526
(4th Cir. 2003) (internal quotation marks omitted).

    2.   Enforcement of the I-864 Affidavits

Sana seeks to enforce the I-864 affidavits of support
signed by Omar and Khizar.  ECF No. 29.  Farhan claims that he

---

[7] Rule 56(a), which "carries forward the summary-judgment stan-
dard expressed in former subdivision (c)," changed "genuine
'issue' [to] genuine 'dispute,'" and restored the word "'shall'
. . . to express the direction to grant summary judgment."  Fed.
R. Civ. P. 56 advisory committee's note.

was fraudulently induced into the marriage and signing the affidavit.  ECF No. 33 ¶ 8.

A prospective immigrant who "is likely at any time to become a public charge is inadmissible."  8 U.S.C. § 1182(a)(4). This restriction may be waived, however, if a citizen or permanent resident signs an affidavit promising to support the sponsored alien at an income of not less than 125% of the federal poverty line.  *See id.* §§ 1182(a)(4)(B)(ii), (C)(ii), 1183a(a)(1)(A), (f)(1).  If the sponsor's income is insufficient to meet this requirement, another person may agree to be jointly and severally liable for the maintenance obligation.  *Id.* § 1183a(f)(5).  The I-864 support affidavit is a legally enforceable contract between the sponsor and the sponsored immigrant, and the sponsored immigrant may sue to enforce the contract in any appropriate court.[8]  *See id.* § 1183a(e)(1); *Younis v. Farooqi*, 597 F. Supp. 2d 552, 554 (D. Md. 2009).

The support obligation ends when the sponsored immigrant has worked for 40 qualifying quarters under the Social Security Act or becomes a naturalized citizen.  8 U.S.C. § 1183a(a)(2)-(3).[9]  Divorce does not terminate the obligation.  *See* ECF No.

---

[8] The sponsor agrees to the personal jurisdiction of any court where suit might be brought.  8 U.S.C. § 1183a(a)(1)(C).

[9] The support obligation also ends when either party dies or the sponsored immigrant permanently departs the United States.  8 C.F.R. § 213a.2(e)(2)(i)-(ii).

7

29-3 at 36 (I-864 affidavit terms).[10]   Courts apply typical
contract defenses to the enforcement of the I-864.[11]

Farhan asserts that the affidavit should not be enforced
because he was fraudulently induced into the marriage, which
Sana used solely to obtain a green card. *See* ECF No. 33 ¶ 8.
The parties agree on many of the facts relevant to this defense.
Farhan and Sana married in Pakistan in March 2009, but they
spent minimal time together and were never alone. *See* ECF Nos.
33 ¶ 5; 34-1 ¶¶ 4-5.   The marriage was never consummated. *See*
ECF Nos. 34-1 ¶¶ 10, 17; 35 ¶ 7.   Farhan and Sana went to Pizza
Hut, where they had a significant dispute. *See* ECF Nos. 34-1 ¶
15; 35 ¶ 9.   Shortly after the arrival of Sana's green card,
Farhan and Sana visited a urologist's office to discuss Farhan's
dysfunction. *See* ECF Nos. 33 ¶ 7; 34-1 ¶ 20.   That night Sana,
accompanied by two police officers, retrieved her belongings and
documents from the Farhan home and left to stay with her sister
in New York. *See* ECF Nos. 33 ¶ 7; 34-1 ¶ 20.   Sana sought to
have the conditions on her green card changed under the Violence
Against Women Act. *See* ECF Nos. 34-1 ¶ 23; 35 ¶ 12.

---

[10] *See also Cheshire v. Cheshire*, No. 3:05-cv-00453-TJC-MCR, 2006
WL 1208010, at *5 (M.D. Fla. May 4, 2006) (collecting cases
before the I-864 made this requirement explicit).

[11] *See, e.g.*, *Wenfang Liu v. Mund*, 748 F. Supp. 2d 958, 963 (W.D.
Wis. 2010); *Cheshire v. Cheshire*, 2006 WL 1208010, at *4.

The parties differ on significant facts about the marriage, the intent behind it, and the cause of its breakdown. Sana declared that the arrangements for the marriage were primarily between her sister and Farhan's mother. ECF No. 34-1 ¶ 2. She did not spend any time alone with Farhan in Pakistan because there were big groups at all of the celebrations. *Id.* ¶ 5. At Pizza Hut, Farhan's sister kept calling him demanding that he bring Sana home to keep their mother company. *Id.* ¶ 15. At the urologist's office, the doctor offered to call the police after Farhan yelled at him and Sana. *Id.* Farhan and his family were abusive, causing her to flee. *See id.* ¶ 23.

Farhan affirmed that the arrangements were undertaken by his mother and Sana's father. ECF No. 35 ¶ 1. Sana's parents did not allow him and Sana to be alone. *Id.* ¶ 2. After Sana arrived in the United States, Sana's sister requested that Sana and Farhan not be allowed to sleep in the same room. *Id.* ¶ 4. At Pizza Hut, Sana told him that "she never really liked him" and that her sister was going to take Sana to New York because she had "found a guy for [her]."[12]   *Id.* ¶ 9. Sana got upset when the urologist told her that there was nothing wrong with Farhan. *Id.* ¶ 6. She refused to accept the doctor's evidence of

---

[12] Although Sana has not objected to this evidence, the Court notes that it is not hearsay because the statements were made by Sana, an opposing party. *See* Fed. R. Evid. 801(d)(2)(A).

Farhan's sexual ability, and her father then "spread the word among relatives that he is not a male in Pakistan." *See id.* ¶ A.

Farhan has raised the defense of fraudulent inducement.[13] *See* ECF Nos. 16 at 2, 33 at 2.  "Since a single valid defense may defeat recovery . . . [a plaintiff's] motion for summary judgment should be denied when any defense presents significant fact issues that should be tried."[14]  Drawing all inferences in Farhan's favor, there are significant factual disputes about Sana's alleged intent to deceive Farhan into entering into the marriage.  Because there is a genuine dispute of material fact, the motion must be denied.  *See* Fed. R. Civ. P. 56(a).

C.    Default Judgment

Sana captions her motion "Motion for Summary Judgment and for Default Judgment" but does not state any grounds for default judgment in the motion or accompanying memorandum.  *See* ECF Nos. 29, 29-1.  Khizar has not responded to the motion.

The entry of a default judgment is left to the Court's discretion, and the Fourth Circuit has a "strong policy" that

---

[13] "If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient."  Restatement (Second) of Contracts § 194 (1981).

[14] 10B Charles Alan Wright et al., *Federal Practice & Procedure* § 2734 (3d ed.) (*citing Johns Hopkins University v. Hutton*, 488 F.2d 912 (4th Cir. 1973)).

"cases be decided on the merits." *Dow v. Jones*, 232 F. Supp. 2d 491, 494-95 (D. Md. 2002) (*quoting United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir.1993)).

Unlike Farhan, Khizar appears to have minimal ties to Sana. According to Sana's counsel, "Khizar, a successful small businessman, has served as a guarantor sponsor of Pakistani immigrants to the United States." ECF No. 24 at 2.  Khizar also has professed a lack of knowledge about the legal process: he was even unsure whether to consent to a motion for an extension of time to file dispositive pretrial motions.  *Id.*

Khizar's participation in this suit has been minimal. Khizar has not answered.  *See* Docket.  On May 25, 2012, Sana's counsel stated that Khizar had informed him that "Khizar incorrectly believed that the matter pending in this case was somehow resolved." ECF No. 22 at 2.  Pursuant to the Court's June 19, 2012 Order, Khizar informed the Court that he did not consent to a settlement conference before a Magistrate Judge, stating "I would like to request this honorable court that this case may not be moved anywhere, and should stay in your honorable court." ECF No. 28.

It also appears that Farhan may be trying to present Khizar's defense.  *See, e.g.*, ECF No. 33 ¶ 8 ("Defendant Khizar and Farhan attest that the Affidavit of Support is not valid . .

11

. .").  As he is not an attorney, Farhan may not represent Khizar.[15]  *See Local Rule* 101.1.a.

Entry of a default judgment against Khizar now would be improper and unfair.  Sana has not presented any argument for default judgment.  *Cf*. ECF No. 29-1.  Khizar has misunderstood that this case is pending and may believe that Farhan is representing him.[16]  Further, there is a dispute of material fact about whether the contract was entered into by fraud; it would be unfair to hold Khizar liable when Farhan may have been fraudulently induced into the marriage.

Accordingly, the motion for default judgment will be denied.  Khizar will have 28 days from the date of the accompanying Order to move to vacate the default for good cause and to file an answer.  *See* Fed. R. Civ. P. 55(c).  If he fails to do so, Sana may again seek default judgment.

---

[15] The Court cautions Farhan that attempting to represent Khizar may also result in sanctions by the Maryland Court of Appeals against Farhan for the unauthorized practice of law.

[16] The Court also notes that the 12/56 Letter sent to Khizar did not include Fed. R. Civ. P. 55, which governs default and default judgment.

III. Conclusion

For the reasons stated above, Farhan will be granted leave to file a surreply.  The motion for summary judgment will be denied.

___2/5/13___
Date

_____
William D. Quarles, Jr.
United States District Judge