IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
SANA MATLOOB,              *
     Plaintiff,            *
          v.               *   CIVIL NO.: WDQ-11-1943
OMAR FARHAN, et al.,       *
     Defendants.           *
                           *
*  *  *  *  *  *  *  *  *  *  *  *  *
```

MEMORANDUM OPINION

Sana Matloob sued Omar Farhan, *pro se*, and Malik Khizar, *pro se*, to enforce financial support affidavits. ECF No. 1. On November 4, 2013, the Court held a bench trial. ECF No. 63. On November 13, 15, and 19, 2013, the parties submitted proposed findings of facts.[1] ECF Nos. 66-68. For the following reasons, the Court will find the defendants liable and award to Matloob damages of $10,908.97.

I. Findings of Fact

As required by Federal Rule of Civil Procedure 52(a), the Court makes the following findings of fact:

---

[1] Also pending is Matloob's unopposed motion to supplement the Proposed Pre-trial Order and to Seal Photographs. ECF No. 57. Because the Court will enter its verdict for Matloob on her claim against the defendants, the motion to supplement will be denied as moot. The motion to seal will be granted.

1. Farhan and Khizar are United States citizens and residents of Maryland. See Tr.[2] at 14-15, 26; Pl. Ex. 2.

2. Khizar is Farhan's uncle. ECF No. 66 at 3.

3. Matloob--a citizen of Pakistan and permanent resident of the United States--resides in New York. Tr. at 14; Pl. Exs. 1, 4 at 116.

4. On March 22, 2009, Farhan and Matloob were married in Pakistan; their parents had arranged the marriage. Tr. at 28-29, 40; Pl. Exs. 1, 4 at 8.

5. Farhan and Matloob consented to the arranged marriage. See Tr. at 27-28, 40.

6. When she wed, Matloob was excited and happy about her marriage to Farhan. See Tr. at 35, 42.

7. Matloob remained at her parents' home after the wedding. See Tr. at 43-45.

8. A few days after Farhan and Matloob married, Farhan returned to the United States. See Tr. at 30.

9. Matloob and Farhan spent only about 15 minutes alone while Farhan was in Pakistan. See Tr. at 43.

10. On October 19, 2009, Matloob applied for an Immigrant Visa to the United States. Pl. Ex. 1.

---

[2] References to "Tr." refer to the transcript of the bench trial.

11. On October 16, 2009, Farhan filed an I-864 Affidavit of Support to sponsor Matloob's visa application ("Farhan Affidavit"). Pl. Ex. 2.

12. Farhan signed the Farhan Affidavit. Tr. at 21; Pl. Ex. 2.

13. Because Farhan had insufficient income to sponsor Matloob's visa, on October 16, 2009, Khizar filed an I-864 Affidavit of Support as a joint sponsor of Matloob's visa application ("Khizar Affidavit"). See Tr. at 25-26; Pl. Exs. 2-3; ECF No. 66 at 3.

14. Khizar signed the Khizar Affidavit. Tr. at 21-22; Pl. Ex. 3.

15. On October 29, 2009, the Department of Homeland Security approved the Farhan and Khizar Affidavits. Pl. Exs. 2-3.

16. On January 25, 2010, Matloob's visa was issued. Pl. Ex. 4 at 18.

17. On February 9, 2010, Matloob entered the United States as a conditional permanent resident. See Tr. at 29; Pl. Ex. 4 at 116; ECF No. 67 at 2.

18. During the 11 months between the wedding and Matloob's arrival in the United States, Matloob and Farhan spoke on the phone but did not meet each other in person. See Tr. at 30, 45-46.

19. Upon her arrival in the United States, Matloob moved into Farhan's home in Maryland. See Tr. at 32, 35-36, 47.

20. Farhan's parents, brother, and sister also lived in the home with Matloob and Farhan. See Tr. at 47-48.

21. Matloob quickly became unhappy with her marriage and living arrangements. See Tr. at 35-36.

22. Against Matloob's wishes, Farhan's mother forced Matloob to perform all the household chores. See Tr. at 48-49.

23. Despite several attempts, Matloob and Farhan were unable to consummate the marriage. See Tr. at 33-34, 37, 49-50.

24. During their attempts to have sexual intercourse, Farhan bit Matloob's breasts and pressed on her neck until she choked. See Tr. at 50-51, 57; Pl. Ex. 9.

25. Farhan swore at Matloob and threatened to kill her and to cancel her green card. See Tr. at 53; Pl. Ex. 11.

26. On March 10, 2010, Farhan and Matloob visited a doctor to obtain treatment for Farhan because of his inability to have sexual intercourse. See Tr. at 50-51.

27. While at the doctor's office, Farhan's doctor observed that Matloob had been crying. See Tr. at 53.

28. Matloob told the doctor that she did not want to return to her husband's home, and the doctor called the police. *See* Tr. at 54-55.

29. The police took photographs of bruises on Matloob's breast which she said resulted from scratches and bites from Farhan during his attempts to have sexual intercourse with her. *See* Tr. at 55-58.

30. The police escorted Matloob to Farhan's home where she retrieved her belongings. *See* Tr. at 58-59.

31. On March 10, 2010, Matloob moved out of her husband's home in Maryland and into her sister's home in New York. *See* Tr. at 14, 61.

32. Matloob left Farhan's home because she was unhappy in the marriage and believed that he was physically and verbally abusive. *See* Tr. at 52-58; Pl. Exs. 9, 11.

33. On October 21, 2010, Matloob obtained a protective order against Farhan in New York, which prohibited him from contacting her for a year. *See* Tr. at 61-62; Pl. Ex. 11.

34. After Matloob left Farhan's home, she did not receive any financial support from Farhan or Khizar. *See* Tr. at 20.

35. Matloob had no income in 2010. *See* Tr. at 17-19.

5

36. For the past five years, Farhan has received about $400 in bi-weekly take-home pay for working at his father's gas station. *See* Tr. at 25-26, 30.

37. In 2010, the federal poverty line was $10,830.00 for a family of one. Pl. Exs. 12-13.

38. After spending several months improving her English language skills, Matloob got a job at a jewelry store and earned slightly more than 125% of the federal poverty lines in 2011 and 2012. *See* Tr. at 15-18; Pl. Ex. 14; ECF No. 67 at 6.

39. On December 18, 2012, Matloob and Farhan divorced. *See* ECF Nos. 41, 66 at 6.

II. Conclusions of Law

In the complaint, Matloob sought financial support from the defendants because they had executed I-864 Affidavits of Support to sponsor her visa application to the United States. *See* ECF No. 1 at 1-2. She alleged that the defendants "are required to provide support to Plaintiff in the amount of 125% of the Federal Poverty Guidelines, retroactive to the date of separation." *Id.* She also sought reasonable attorney's fees. *Id.*

A. Validity of Support Affidavit

A prospective immigrant who "is likely at any time to become a public charge is inadmissible." 8 U.S.C.

6

§ 1182(a)(4)(A). This restriction may be waived, however, if a citizen or permanent resident signs an affidavit promising to support the sponsored alien at an income of not less than 125% of the federal poverty line. See id. §§ 1182(a)(4)(B)(ii), (C)(ii), 1183a(a)(1)(A), (f)(1). If the sponsor's income is insufficient to meet this requirement, another person may agree to be jointly and severally liable for the maintenance obligation. See id. § 1183a(f)(5). The I-864 support affidavit is a legally enforceable contract between the sponsor and the sponsored immigrant, and the sponsored immigrant may sue to enforce the contract in any appropriate court.[3] See id. § 1183a(e)(1); Younis v. Farooqi, 597 F. Supp. 2d 552, 554 (D. Md. 2009).

The support obligation ends when the sponsored immigrant has worked for 40 qualifying quarters under the Social Security Act or becomes a naturalized citizen.[4] § 1183a(a)(2)-(3).[5]

---

[3] The sponsor agrees to the personal jurisdiction of any court where suit might be brought. § 1183a(a)(1)(C).

[4] "The majority of sponsored immigrants will have to work ten years to meet the 40 quarters requirement, as a maximum of four quarters can be earned in a year." Cheshire v. Cheshire, No. 3:05-cv-00453-TJC-MCR, 2006 WL 1208010, at *4 (M.D. Fla. May 4, 2006). Matloob has only worked in the United States since 2011. See Tr. at 15-18; Pl. Ex. 14; ECF No. 67 at 6. Although Matloob can be credited with work performed by her husband during their marriage, see § 1183a(3)(B)(ii), she and Farhan were married for less than four years, see Tr. at 29; ECF Nos. 41, 66 at 6.

Divorce does not terminate the obligation. *See Younis*, 597 F. Supp. 2d at 554 (*citing Shumye v. Felleke*, 555 F. Supp. 2d 1020, 1024 (N.D. Cal. 2008)). Courts apply typical contract defenses to enforcement of the I-864. *See, e.g., Wenfang Liu*, 748 F. Supp. 2d at 963; *Cheshire*, 2006 WL 1208010, at *4.

At trial, Khizar and Farhan affirmed that they had executed the I-864 affidavits of support to sponsor Matloob's visa application to the United States, and these affidavits were approved by the Department of Homeland Security. *See* Tr. at 21-22; Pl. Exs. 2-3. Thus, the affidavits are facially valid contracts obligating the defendants to support Matloob, jointly and severally, at 125% of the Federal Poverty Guidelines. *See Younis*, 597 F. Supp. 2d at 554; § 1183a(a)(1), (f). Further, none of the conditions that would terminate the defendants' obligations under the support affidavits has occurred, as Matloob and Farhan are still alive and live in the United States, Matloob is not a citizen, and Matloob has worked in the United States for less than 40 qualifying quarters.[6]

---

[5] The support obligation also ends when either the sponsor or sponsored party dies or the sponsored immigrant permanently departs the United States. *Wenfang Liu v. Mund*, 748 F. Supp. 2d 958, 962 (W.D. Wis. 2010).

[6] *See* Tr. at 14-18, 26; Pl. Exs. 1, 2, 4 at 116, 14; ECF No. 67 at 6; *supra* note 4.

In his opposition to Matloob's motion for summary judgment, and at the trial, Farhan contended that the Farhan Affidavit is not an enforceable contract because he was fraudulently induced into the marriage.[7] *See* Tr. at 26-27; ECF No. 33 at 2. "Where a sponsored immigrant 'never intended to enter into a lasting marital relationship, but was merely using the sponsor to gain immigrant status,' it could be argued that the marriage was the result of fraudulent inducement on the part of the sponsored immigrant." *Cheshire*, 2006 WL 1208010, at *4 (*quoting* Charles Wheeler, *Alien v. Sponsor: Legal Enforceability of the Affidavit of Support*, 10-23 Bender's Immigr. Bull. 3 (2005)). The sponsor has the burden of proving that the immigrant committed fraud, however, through the introduction of admissible evidence. *Id.*; *Skorychenko v. Tompkins*, 08-CV-626-BBC, 2009 WL 3126379, at *3 (W.D. Wis. Sept. 28, 2009) (finding defendant liable under the affidavit of support, despite his contention that "plaintiff fraudulently induced him into signing the I-864 form with a promise of marriage she had no intention of carrying out" because he "produced no admissible evidence of fraud").

In his testimony, Farhan claimed that Matloob "cheated" him because she did not stay in the marriage after her arrival in the United States. *See* Tr. at 30-31. However, it is undisputed

---

[7] At trial, Khizar offered no argument or evidence contesting the validity of the Khizar affidavit.

that problems--including their inability to consummate the marriage--arose almost immediately after Matloob arrived in the United States. See Tr. at 33-37, 49-50. Also, the evidence is that Matloob considered Farhan physically and verbally abusive. See Tr. at 52-58; Pl. Exs. 9, 11. Both parties consented to the arranged marriage, and Matloob was happy and excited when she married Farhan in Pakistan. See Tr. at 27-28, 40, 42. Accordingly, Farhan has produced insufficient evidence that the Farhan Affidavit is invalid because Matloob fraudulently induced him to sign it with a false promise to remain married to him. See Cheshire, 2006 WL 1208010, at *4 (rejecting defendant's fraudulent inducement defense because "[although] the marriage was beset by problems early on, there is insufficient evidence that plaintiff, from the beginning, had no intention to remain married once she came to the United States"); Erler v. Erler, CV-12-2793-CRB, 2013 WL 6139721, at *3 (N.D. Cal. Nov. 21, 2013) (brief duration of marriage alone is insufficient to meet burden of proof to show fraud).

At the hearing, Farhan also asserted that he should not be liable for the support of Matloob because his income is very low. See Tr. at 22-24. Even if low income were a defense to

the validity of an I-864 affidavit,[8] Farhan's income was insufficient to sponsor Matloob's visa when he agreed to support her; this was the reason for Khizar's joint sponsorship. See Pl. Exs. 2-3. Farhan did not contend at trial that his income and Khizar's income were insufficient to meet their contractual obligations to support Matloob. Accordingly, the Court will hold that the Farhan Affidavit and Khizar Affidavit are valid, enforceable contracts, and that Farhan and Khizar are jointly and severally liable for the support of Matloob according to the Affidavits' terms.

B. Remedy

The I-864 affidavit permits recovery of "damages that would put plaintiff in as good a position as she would have been had the contract been performed." Younis, 597 F. Supp. 2d at 554 (quoting Shumye, 555 F. Supp. 2d at 1024 (internal quotations omitted)). "To determine the appropriate damages, courts compare the plaintiff's annual income for the particular years at issue . . . against the 125% poverty threshold for each particular year." Id. "A sponsor may also be held liable for legal fees and other costs of collection." Id. at 554-55.

---

[8] See Cheshire, 2006 WL 1208010, at *7("[T]he issue of whether defendant can pay is irrelevant to the issue of defendant's liability.").

Matloob had no income in 2010, and Farhan ceased supporting Matloob on March 10, 2010, when she left his home. See Tr. at 14, 16-20. Accordingly, Matloob is entitled to recover 125% of the Federal Poverty Guidelines for 2010 ($13,537.50), pro-rated for the nine and two-thirds months (March 10, 2010 through December 31, 2010) in which she received no support and had no income. The Court will order the defendants to pay $10,908.97 in damages to Matloob. Matloob may file a motion and affidavit demonstrating her reasonable attorneys' fees and costs within 21 days of the order accompanying this opinion.

III. Conclusion

For the reasons stated above, the defendants are jointly and severally liable to Matloob for $10,908.97 in damages under the I-864 financial support affidavits.

4/9/14
Date

William D. Quarles, Jr.
United States District Judge